IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br>　　　　　Plaintiff,<br>　　v.<br>MARC NUNEZ,<br>　　　　　Defendant. | Case No. 21-cr-00013-CRB-1<br><br>**ORDER DENYING MOTION TO SUPPRESS** |

Defendant Marc Nunez has been charged with possession of child pornography in violation of 18 U.S.C. § 2252(a). He now moves to suppress all evidence tracing back to two search warrants: one issued May 28, 2020 to search his cell site location information and the other issued June 10, 2020 to search his person and residence. Nunez argues that neither of the warrant applications established probable cause. Nunez also requests a Franks hearing based on alleged omissions in the warrant applications.

After careful consideration of the parties' briefing, the Court concludes there is no need for oral argument. The Court denies Nunez' suppression motion because the warrant applications established probable cause and denies Nunez' request for a Franks hearing because Nunez fails to make a substantial preliminary showing that the warrant applications intentionally or recklessly omitted material information.

## I. BACKGROUND

### A. May 28, 2020 Warrant Application

On May 28, 2020, Jeffrey Houtteman, a Special Agent with the U.S. Department of Homeland Security, applied for a warrant to obtain cell site location information for a cell

phone believed to be used by Nunez.  Falk Declaration (dkt. 30), Ex. B at 53.[1]  The warrant application explains that Special Agent Houtteman believed that the cell site location information would lead to evidence that Nunez violated 18 U.S.C. § 2252(a), which prohibits, in relevant part, knowing receipt, possession, and transmission of child pornography.  See generally id.  Special Agent Houtteman's warrant application set forth the following information in support of the warrant.

On or about August 27, 2019, Homeland Security Investigations ("HSI") executed a search of the residence of Confidential Witness 1[2] ("CW-1") for crimes related to the sexual exploitation of children.  Id. at 57.  Among other items, HSI seized an Apple iPhone belonging to CW-1.  Id.  CW-1's iPhone contained a contact for Nunez that included Nunez' phone number and listed Nunez' address as XX Beverly Street.[3]  Id. at 57–58.  The contact information for Nunez showed a "created date" of March 11, 2015 and a "last modified" date of December 21, 2018.  Id. at 58.

CW-1's iPhone contained a message-based conversation between CW-1 and Nunez from October 4, 2018 to July 31, 2019.  Id.  The warrant application includes the following messages from a July 31, 2019 exchange:

- Nunez: Send yours ;)
- [CW-1 sends an approximately thirty-eight second video file depicting an age difficult male being sodomized by an adult male.  The video depicts both from the torso down.] ["first video"]
- [CW-1 sends an approximately one minute and twelve second video of an age difficult male identified as "SUSPECTED MINOR VICTIM 12" lying on a bed being sodomized by an adult male who appears to be CW-1.] ["second video"]
- Nunez: that the 15yr?

---

[1] All exhibit cites are to ECF page numbers.
[2] The government requests that the identity of Confidential Witness 1 remain anonymous.  Motion to Suppress (dkt. 29) at 2, fn. 2.
[3] This Order uses "XX Beverly Street" in lieu of the actual street address.

1          • CW-1: Ya

2          • CW-1: Oh no that's a 16yr old.

Id. The warrant application indicates that the age difficult male appearing in the second video is suspected to be a minor, but states that law enforcement had not confirmed his identity at the time the warrant was sought. Id.

    HSI agents subsequently interviewed CW-1 on February 21, 2020. During the interview, CW-1 identified Nunez in a photograph found on CW-1's iPhone. Id. at 58. CW-1 told the agents that he trades pornography with Nunez, including sexually explicit files of minors, and that Nunez is sexually interested in minors. Id. at 59. CW-1 also provided background information on Nunez, including where Nunez lives and works. Id.

    During the same interview, CW-1 confirmed the identity of the age difficult male appearing in the second video. Id. CW-1 further confirmed that he was the adult male appearing in the second video and sodomizing the age difficult male. Id. CW-1 recalled sending the video to Nunez. Id.

    HSI agents subsequently obtained an image of Nunez from the California Department of Motor Vehicles that appeared to be the same individual in the image found on CW-1's iPhone whom CW-1 identified as Nunez. Id. at 59. Agents also confirmed that CW-1 accurately identified Nunez's employer. Id. at 60.

    Records from the California Department of Motor Vehicles contained the same address for Nunez as CW-1's iPhone—XX Beverly Street. Id. at 59. Records from CLEAR[4] listed multiple addresses for Nunez, including the XX Beverly Street address as well as others. Id. at 60. Records obtained from T-Mobile indicated that the number associated with Nunez in CW-1's phone was registered to a subscriber believed to be Nunez's mother. Id.

    Based on the foregoing, the warrant application states that "there is probable cause to believe that [18 U.S.C. § 2252(a)] has been violated, and that the contraband, property,

---

[4] The warrant application does not specify exactly what "CLEAR" is or the records available therefrom. See Falk Declaration, Ex. B at 60.

3

1  evidence, fruits and instrumentalities of this offense" are likely to be obtained via a search
2  of the cell site location information for Nunez' iPhone. Id. at 61. Magistrate Judge Tse
3  issued the warrant. Id. at 65.

### B.  June 10, 2020 Warrant Application

On June 10, 2020, Christine Brital, an HSI Special Agent, applied for a warrant to search XX Beverly Street and Nunez' person. Falk Declaration, Ex. A at 4. The warrant application set forth much of the same information as the May 28, 2020 warrant, namely: Nunez' July 31, 2019 messages with CW-1 in which CW-1 sent Nunez the two videos, CW-1's statements to HSI agents that Nunez traded and was interested in sexually explicit materials involving minors, and HSI agents' subsequent review of various records. Id. at 19–21.

In addition, the application stated that the United States Postal Inspection Service informed HSI agents that Nunez received mail at XX Beverly Street. Id. at 21–22. It also stated that, pursuant to the May 28, 2020 warrant, agents obtained 716 notifications with GPS location data for Nunez' phone between June 1, 2020 and June 9, 2020. Id. at 23. Of these, 487 were located within a margin of error from the area encapsulating XX Beverly Street. Id.

The application also includes statements from Agent Brital regarding the typical behavior of child pornography collectors. Id. Based on her training and experience, Agent Brital stated in relevant part that: (1) individuals who possess child pornography tend to keep it in both "hard copies" and "digital or electronic format[s];" (2) child pornography can be located on digital devices through forensic tools; (3) individuals often share or trade child pornography with others and "rarely completely destroy correspondence from other child pornography distributors/possessors;" and (4) "the very nature of electronic storage means that evidence of the crimes is often still discoverable for extended periods of time even after the individual 'deleted' it." Id. at 23–26.

Based on the foregoing, Magistrate Judge Tse issued the warrant to search XX Beverly Street and Nunez' person for evidence of violations of 18 U.S.C. § 2252(a).

4

### C. Background Relevant to Nunez' Franks Request

The first question that Nunez' motion presents is whether the above-described warrant applications supported the magistrate's probable cause determinations. But Nunez also contends that the affidavits offered in support of the warrants contain four categories of omissions. Mot. at 6–7. For background, these omissions are summarized here. The materiality of the omissions is analyzed below in Section III.B.2.

First, the affidavits submitted in support of the warrants excluded eighty-six messages that preceded the July 31, 2019 exchange in which CW-1 sent Nunez the two videos. Falk Declaration, Ex. C at 78–90. These eighty-six messages were sent between October 4, 2018 and July 31, 2019. Id. None of them involve discussion, videos, or images of child pornography. Id. The applications also exclude the five messages between CW-1 and Nunez that followed CW-1's July 31, 2019 text "Oh no that's a 16yr old." Id. at 90. These five messages discuss the second video. Id.

Second, the affidavits do not disclose that a forensic review of CW-1's digital devices did not reveal any additional evidence connecting Nunez to child pornography. Compare Falk Declaration, Ex. G at 99–132 with Exs. A & B.

Third, the affidavits do not disclose that CW-1 ended up being wrong in one of his age assessments of another suspected minor. See Falk Declaration, Ex. D at 92. CW-1 initially identified the individual as a minor, but subsequent investigation revealed that the individual was in fact an adult. Id. The suspected minor does not appear to be one of the age difficult males who appear in the two videos CW-1 sent Nunez on July 31, 2019. Id.

Fourth, the affidavits do not disclose that CW-1 told law enforcement officers that he had misrepresented people's ages in the past. See Falk Declaration, Ex. E at 94. CW-1 told law enforcement officers that he "wanted people to like him, so he fed their desire about individuals being minors when they were not." Id. CW-1 said that he had made such misrepresentations to Nunez. Id. However, CW-1 also told law enforcement officers that "he did not represent that someone was sexually interested in minors when they were not." Id.

### D. The Instant Motion

The search of Nunez' residence revealed multiple images and videos of suspected child pornography. See Opposition to Motion to Suppress ("Opp.") (dkt. 32) at 3. Nunez was charged with violation of 18 U.S.C. § 2252(a)(4) and (b)(2). Id. Nunez contends that the images and videos all trace back to searches carried out pursuant to the May 28, 2020 and June 10, 2020 warrants. Mot. at 2. He argues that "[t]he dearth of evidence contained in the affidavits—coupled with the material information omitted from them—renders each search unconstitutional." Id. He now seeks "to suppress all fruits from the unlawful searches." Id.

## II. LEGAL STANDARD

Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. Unless an exception applies, the exclusionary rule prevents unlawfully obtained evidence from being introduced at trial against the person whose Fourth Amendment rights were violated. See Mapp v. Ohio, 367 U.S. 643, 655 (1961). This includes other evidence "come at by exploitation of that illegality." Wong Sun v. United States, 371 U.S. 471, 488 (1963) (quotation omitted).

Police may search a constitutionally protected area when they have a warrant supported by probable cause. Katz v. United States, 389 U.S. 347, 357–58 (1967). Probable cause exists when "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas v. United States, 517 U.S. 690, 696 (1996). This "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018) (quoting Illinois v. Gates, 462 U.S. 213, 243–44 n.13 (1983)). Whether a magistrate "had a substantial basis for concluding that probable cause existed" is reviewed for "clear error" and with "great deference." United States v. Schesso, 730 F.3d 1040, 1045 (9th Cir. 2013).

A defendant challenging the validity of a search warrant may also move for a

Franks hearing.  See Franks v. Delaware, 438 U.S. 154 (1978).  To establish cause for a Franks hearing, a defendant must make a substantial preliminary showing of (1) a knowing or reckless omission in the warrant application that (2) is material to the probable cause question.  See United States v. Chavez-Miranda, 306 F.3d 973, 979 (9th Cir. 2002).  If a defendant makes this showing, "the Fourth Amendment requires that a hearing be held at the defendant's request."  Franks, 438 U.S. at 155–56.  Then, if "at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."  Id. at 156.

## III.     DISCUSSION

Nunez argues that the warrant applications did not support the magistrate judge's probable cause determinations.[5]  See e.g. Mot. at 16–22.  None of Nunez' arguments are persuasive.  As explained below, the warrant applications established a fair probability that evidence relating to a violation of 18 U.S.C. § 2252(a) would be found from a search Nunez' cell site location information and from a search of his person and XX Beverly Street.  Therefore, the magistrate judge did not commit clear error in issuing the warrants.

Nunez also argues that he is entitled to a Franks hearing because (1) the warrant applications recklessly or intentionally omitted certain information and (2) the omitted information was material to the magistrate judge's probable cause determinations.  See e.g. Mot. at 22–24.  For reasons set forth below, the Court denies the Franks request because Nunez has not made the required substantial preliminary showing that the warrant applications recklessly or intentionally omitted material information.

### A.     Warrant Applications

The question here is whether the magistrate judge clearly erred in determining that

---

[5] Because the warrant applications are based on substantially the same information, Nunez challenges both applications simultaneously.  See Mot. at 3.

7

there was a fair probability that the warrants would lead to evidence of violations of 18 U.S.C. § 2252(a).  See Schesso, 730 F.3d at 1045.  As relevant here, 18 U.S.C. § 2252(a) prohibits knowing receipt, possession, or transmission of (1) sexually explicit conduct (2) involving a minor.  See 18 U.S.C. § 2252(a); see also United States v. Battershell, 457 F.3d 1048, 1051 (9th Cir. 2006).  "Sexually explicit conduct" means "sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex."  18 U.S.C. § 2256(2)(A)(i).

Here, the warrant applications contained sufficient information for a reasonable magistrate to find probable cause that the search warrants would lead to discovery of evidence of sexually explicit conduct involving a minor.  As described above, the warrant applications state that Nunez received "age difficult" pornography from CW-1 on July 31, 2019.  While the "age difficult" males appearing in the videos may not have been underage, a reasonable magistrate could conclude that the age difficult males were minors.  This conclusion is supported by Nunez's response to the second video—"that the 15yr?"  This response could be reasonably interpreted as indicating that (1) Nunez believed that at least one of the age difficult males was underaged; (2) Nunez previously discussed the video with CW-1 ("the 15yr"); and (3) Nunez expected CW-1 to send the video of the minor that they had previously discussed ("that the 15yr?").  In addition, CW-1's response ("Oh no that's a 16yr old") represented that the age difficult male was a minor.  Consistent with that, the affidavit described the age difficult male as a "suspected minor victim."  Accordingly, a reasonable magistrate could conclude that there was a substantial chance that at least the second video depicted a minor engaged in sexually explicit conduct.  See Wesby, 138 S. Ct. at 586 (probable cause requires a "probability or substantial chance of criminal activity," not "an actual showing of such activity").

This conclusion is bolstered by CW-1's statements to law enforcement that Nunez had a sexual interest in minors and traded child pornography.  A reasonable magistrate could conclude that CW-1's statements were credible because (1) meta-data in CW-1's iPhone indicated that he had known Nunez for several years (i.e. contact "created date" of

8

March 11, 2015); (2) CW-1 offered specific facts about Nunez (e.g. where he worked and lived); (3) law enforcement subsequently confirmed these facts; and (4) the statements were consistent with the messages and videos found on CW-1's iPhone. Thus, taking the facts set forth in the warrant applications as a whole, the magistrate did not clearly err in finding that probable cause supported issuance of both warrants.

For reasons explained below, Nunez' arguments to the contrary are not persuasive.

### 1. Unwitting Recipient of One Age Difficult Video

Nunez argues that the two videos that CW-1 sent to Nunez "were not child pornography on their face." Mot. at 14. Nunez further argues that the affidavit only reveals that one of the videos depicted a suspected minor and that nothing in the affidavit suggests that Nunez solicited or otherwise took affirmative steps to obtain child pornography from CW-1. Id. at 14–15. In short, Nunez contends that the unwitting receipt of one age difficult video without further evidence of attempts to obtain child pornography does not provide a basis for probable cause. Id. at 16–19; see also Reply (dkt. 38) at 2–4.

The key fact that undermines these arguments is Nunez' response to the second video. Not only did Nunez believe that the video depicted a minor, his reply ("that the 15yr?") suggested that he previously discussed child pornography with CW-1, including the video he received. Nunez' reply did not suggest surprise or shock at receiving a video appearing to depict an under-aged male being sodomized by an adult male. A reasonable magistrate could thus find that the reply indicated that Nunez was a willing and interested recipient of what he believed was the child pornography that he had previously discussed with CW-1.[6]

The argument that Nunez received only one video depicting a suspected minor is unpersuasive for two additional reasons. First, knowing receipt of a single video of child

---

[6] Nunez also argues that the magistrate judge could not have reasonably concluded that the videos depicted minors because he did not view the videos himself. Mot. at 17. For the reasons discussed above, the magistrate had a reasonable basis from which to conclude there was a substantial chance that at least the second video depicted a minor.

pornography is a violation of 18 U.S.C. § 2252(a) in and of itself. While Nunez argues that the application did not definitely "establish" that the age difficult male was a minor, that is not the standard.[7] See Hoffman v. Jourdan, 2017 WL 5070364, at*1 (E.D. Cal. Nov. 3, 2017) ("For probable cause to exist, it is not necessary that the crime actually have occurred."). The application contains sufficient information to reasonably conclude that there was a substantial chance that the suspected minor in the second video was in fact a minor and that Nunez was aware of this fact.

Second, a reasonable magistrate could conclude that Nunez's response to the video coupled with CW-1's statements to HSI agents suggested an ongoing pattern of receipt, possession, or consumption of child pornography. This conclusion is strengthened by Agent Brital's statements that, based on her training and experience, consumers of child pornography tend to trade it and keep it on their devices for extended periods of time, especially when it is in digital form. Thus, the second video together with the other information set forth in the affidavit provides further support for the magistrate's determination that the warrants could lead to additional evidence of child pornography. See, e.g., United States v. Schesso 730 F.3d 1040, 1045 (9th Cir. 2013) (based on one video, "the state court judge permissibly drew the 'reasonable inference' that there was probable cause to believe [defendant] had other child pornography materials as well").

### 2. Staleness

Nunez argues that the ten-and-a-half-month period between CW-1's transmission of the videos to Nunez and the submission of the first search warrant application renders the videos stale. Mot. at 20–21. In particular, Nunez emphasizes that the affidavit "cites no valid or reliable evidence to suggest Mr. Nunez was engaged in a 'continuing pattern of activity' or had a history of trading or collecting child pornography." Id. at 21.

---

[7] Nunez relies on States v. Perkins, 850 F.3d 1109 (9th Cir. 2017) to argue that the affidavit did not establish that either video constituted child pornography. See Mot. at 17; Reply at 2. But Perkins involved the more difficult question of whether a single image was "lascivious." Id. at 1122–23. In contrast, there is no dispute here that the videos depicted sexually explicit conduct. And again, the magistrate had a reasonable basis to find that at least the male in the second video was a minor.

Staleness involves more than the passage of time. United States v. Dozier, 844 F.2d 701, 707 (9th Cir. 1988) ("The mere lapse of substantial amounts of time is not controlling in a question of staleness."). It is evaluated "in light of the particular facts of the case and the nature of the criminal activity and property sought." United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir. 1993). In the context of child pornography, the Ninth Circuit has recognized that child pornography consumers often store such materials "for long periods in a secure place, typically in their homes." United States v. Lacy, 119 F.3d 742, 745 (9th Cir. 1997) (finding that child pornography downloaded ten months before the warrant application was not stale).

The magistrate judge did not clearly err in finding that, despite the passage of ten-and-a-half months, there was still a substantial chance that the warrants would return evidence of child pornography. In particular: (1) it is reasonable to conclude the second video depicted child pornography; (2) Nunez' response to the second video suggested an interest in child pornography as well as previous discussions with CW-1 about child pornography; (3) CW-1 told HSI agents that Nunez was interested in child pornography; and (4) Agent Brital explained the tendency of child pornography consumers to keep material for extended periods of time, especially in digital form. Indeed, "that people who collect child pornography tend to keep their materials for long periods is arguably a matter of common sense that any magistrate could infer." United States v. Bohannon, 2020 WL 7319430, at *7 (N.D. Cal. Dec. 11, 2020). Based on the above, the magistrate judge did not clearly err by making such an inference here.[8]

### 3. Credibility of CW-1

Throughout his motion, Nunez argues that the affidavit failed to set forth sufficient facts to establish the credibility of CW-1's statements to law enforcement. See Mot. at 20 (arguing that "the four corners of the affidavit provide no information that allowed the

---

[8] Plaintiff leans heavily on United States v. Raymonda, 780 F.3d 105 (2nd Cir. 2015) to argue that the videos were stale, but that out-of-circuit decision is not persuasive. What was missing in Raymonda is present here: evidence suggesting a "demonstrable interest" in child pornography. Id. at 116–17.

11

magistrate judge to weigh CW-1 credibility"); see also Reply at 4–6.

The credibility of a confidential witness is determined on a case-by-case basis. Frimmel Mgmt., L.L.C. v. United States, 897 F.3d 1045, 1052 (9th Cir. 2018). In general, "the warrant application should support an inference that the source was trustworthy and that the source's accusation of criminal activity was made on the basis of information obtained in a reliable way." Id. (internal quotations omitted).

Here, the warrant applications set forth sufficient information for a reasonable magistrate to credit CW-1's statements, including that (1) CW-1 had known Nunez for several years; (2) HSI agents independently corroborated information CW-1 provided; (3) CW-1's statements to law enforcement officers regarding Nunez's interest in minors were consistent with the text messages exchanged between CW-1 and Nunez; and (4) CW-1 was making statements against his own self-interest.[9]

Nunez' arguments to the contrary are not persuasive. For example, Nunez argues that the warrant applications lack "facts about CW-1's history of providing reliable information in previous investigations" and fail to show "that his accusations against Mr. Nunez were made on the basis of reliable information." Mot. at 19 (internal citation and emphasis omitted). But HSI agents independently confirmed information that CW-1 provided, suggesting he is a reliable source. Illinois v. Gates, 462 U.S. 213, 244 (1983) (when "an informant is right about some things, he is more probably right about other things"). Similarly, CW-1's statements to HSI agents about Nunez's interest in child pornography were consistent with the conversation and videos that agents found on CW-1's phone. In other words, it was reasonable to find that CW-1's statements were reliably based on his years-long, firsthand interactions with Nunez. Thus, the magistrate judge did not clearly err in crediting CW-1.

---

[9] Nunez contends that CW-1 had motive "to finger as many targets as possible" to obtain leniency (Mot. at 15), but the government persuasively responds that CW-1 "would receive no benefit unless the government was able to corroborate CW-1's information." Opp. at 11, fn. 5; see United States v. Rowland, 464 F.3d 899, 908 (9th Cir. 2017) (an informant known to law enforcement "knows that he may be tracked down and held accountable for false assertions").

### 4. June 10, 2020 Warrant

Nunez raises two challenges specific to the June 10, 2020 warrant application. First, Nunez argues that the magistrate clearly erred by finding that there was a substantial chance that a search of Nunez' residence would return evidence of child pornography. Mot. at 25–26. Second, Nunez argues that with the cell site location information excluded, the June 10, 2020 application fails to establish XX Beverly Street as Nunez' residence. Id. at 25–26. Neither argument is persuasive.

#### a. Nunez' Residence

Nunez argues that the June 10, 2020 warrant application fails to establish probable cause to believe that a search of Nunez' residence would likely return evidence of child pornography. Mot. 25–26. Nunez points out that the only evidence of the transmission of suspected child pornography involved his cell phone. Id. Nunez argues that, as a result, the warrant application fails to establish a fair probability that a search of his residence would return evidence of child pornography. Id.; see also Reply at 8–9.

Accepting Nunez' argument would mean placing unreasonable restraints on a magistrate's ability to exercise common sense when evaluating a warrant application for probable cause. As discussed above, the application contained evidence suggesting that Nunez discussed, traded, and consumed child pornography. It further set forth statements of law enforcement officers regarding child pornography consumers' propensity to keep such materials in a variety of forms, including hardcopy, computer, and electronic storage, at their residence. And a magistrate may "rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found." See United States v. Fannin, 817 F.2d 1379, 1382 (9th Cir. 1987). Thus, the magistrate did not clearly err in concluding that the trading and consumption likely extended beyond Nunez' cell phone. See, e.g., United States v. Terry, 911 F.2d 272, 275 (9th Cir. 1990) (a magistrate "need not determine that the evidence sought is in fact on the premises to be searched . . . or that the evidence is more likely than not to be found where the search takes place . . . [a magistrate] need only conclude that it would be reasonable to seek the

13

1   evidence in the place indicated in the affidavit") (internal citation omitted).

### b.     Nexus to XX Beverly Street

Last, Nunez argues that the Court must exclude the cell site location information obtained pursuant to the May 28, 2020 warrant because the warrant lacked probable cause. Mot. at 26–27.  With the cell site information excluded, Nunez argues that the June 10, 2020 warrant fails to establish XX Beverly Street as Nunez' residence.

This argument fails because the May 28, 2020 warrant was supported by probable cause for the reasons explained above.[10]  And the cell site location information obtained pursuant to the warrant—along with the other information set forth in the affidavit— established a sufficient likelihood that Nunez resided at XX Beverly Street.[11]

## B.     Franks Hearing

Nunez fails to make the substantial preliminary showing required for a Franks hearing.  A defendant requesting a Franks hearing is required to make "a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information." United States v. Reeves, 210 F.3d 1041, 1044 (9th Cir. 2000).  Nunez does not meet either requirement here.

### 1.     Intentional or Reckless Omission

Nowhere in Nunez' Motion does he specifically argue that the alleged omissions were intentional or reckless.  See Mot. at 22–24; see also Opp. at 20.  Instead, Nunez asserts that "the relevance of the material omissions is self-evident and is the type of information any 'reasonable person' would have anticipated that the magistrate would have wanted to know." Mot. at 24.  In his Reply, Nunez elaborates that "[b]ecause all of

---

[10] In his Reply, Nunez argues that the May 28, 2020 warrant application "failed to incorporate any language regarding the habits of child pornography possessors" and thus failed to establish probable cause to believe that the suspected child pornography would be found on Nunez' phone. Reply at 8.  But even without such language, the magistrate could reasonably make this inference. See Bohannon, 2020 WL 7319430, at *7.

[11] Because the Court finds that probable cause supports the May 28, 2020 warrant, it does not address the government's argument that even with the cell site location information excluded, the warrant application still establishes a sufficient nexus to XX Beverly Street.  See Opp. at 18.

14

the statements and omissions were within the affiant's personal knowledge . . . it is clear that they were omitted with at least a reckless disregard for the truth." Reply at 10.

Nunez' bald assertion of recklessness falls far short of the substantial preliminary showing required for a Franks hearing. Indeed, Nunez cites United States v. Perkins, 850 F.3d 1116 (9th Cir. 2017) to support his argument, but Perkins only highlights the type of extraordinary facts required to infer reckless disregard. Reply at 10–11. In Perkins, the warrant application was based on two images alleged to show "lascivious" depictions of minors. Perkins, 850 F. 3d at 1122–23. Whether an image is "lascivious" is a difficult, "subjective determination." Id. at 1118. In contrast, there is no dispute that the videos here depicted sexually explicit conduct. Even more important, the Perkins warrant omitted (1) Canadian authorities' determination that "the images were not pornographic"; (2) descriptions of the images suggesting that they were not pornographic (e.g. "there is no clear and obvious sexual purpose to the picture"); and (3) "copies of the images." Id. at 1113–17. The omissions in Perkins thus went directly to the central issue of whether the images in question were "lascivious." The record here does not similarly reveal a "clear, intentional pattern" of omissions designed to present "a skewed version of events." Id. at 1117–18. There is thus no basis from which to infer reckless disregard, much less intentional omission.

### 2. Materiality

Even assuming that Nunez established that the omissions here were the result of reckless disregard or intentionality, he fails to show that the omitted information would have materially altered the probable cause analysis. United States v. Ruiz, 758 F.3d 1144, 1148 (9th Cir. 2014).

First, Nunez argues that the warrant applications were misleading because they "cut and paste 6 isolated text messages" and omit the preceding eighty six messages. Mot. at 19–20. Nunez points out that none of the preceding messages, which were sent over an eight-month period, involve discussion, images, or video of child pornography. Based on this point, Nunez contends that the preceding text messages (1) tend to suggest that Nunez

15

did not have an interest in child pornography and (2) undermine CW-1's statements that Nunez had an interest in child pornography. Id.

This argument fails because including the entire conversation between CW-1 and Nunez would have, if anything, only strengthened the magistrate judge's probable cause determination. While it is true that most of the messages between Nunez and CW-1 do not discuss child pornography, the messages that Nunez sends CW-1 after receiving the second video are especially relevant. Specifically, after CW-1 replied, "Oh no thats a 16yr old," Nunez responds:

- I'll look in a bit ;)
- Oh okay still hot lol
- Lucky you

Falk Declaration (dkt. 30), Ex. C at 90. This response strengthens the conclusion that Nunez had an interest in child pornography, in addition to adult pornography.

Second, Nunez points out that a forensic review of CW-1's devices did not reveal any additional transmissions of child pornography between Nunez and CW-1. Mot. at 20. Nunez argues that the warrant application misleadingly omitted this information, which, Nunez argues, tends to undermine CW-1 statements that he traded child pornography with Nunez. Id.

The forensic review of CW-1's devices would not have materially altered the probable cause determination. Probable cause rests on a "totality of the circumstances." Gates, 462 U.S. at 238. Here, the absence of additional evidence does not undermine the evidence that does exist and that does establish probable cause. Most relevant, CW-1's device did contain evidence of a transmission of suspected child pornography to Nunez, which in and of itself provided probable cause of a potential violation of 18 U.S.C. § 2252(a). Further, the July 31, 2019 exchange supported CW-1's broader statements that Nunez consumed and traded child pornography. And a reasonable magistrate could infer that a search of Nunez' home and electronic devices would turn up evidence of a trading relationship, regardless of what else was or was not found on CW-1's devices. Thus,

inclusion of the forensic review would not have altered the ultimate outcome.

Nunez' remaining arguments fail for similar reasons. Specifically, Nunez argues that the warrant applications were misleading because they omitted that (1) CW-1 had been wrong about the age of an individual who he incorrectly believed to be a minor and (2) CW-1 told law enforcement officers he "wanted people to like him, so he fed their desire about individuals being minors when they were not." Mot. at 6–7.

These alleged omissions tend to suggest that the age difficult male in the second video may not have been a minor and tend to undermine CW-1's statements to law enforcement officers. Even with this information included, however, the application contains sufficient facts to support probable cause. In particular: (1) neither of these alleged omissions directly casts doubt on the age of the suspected minor in the second video; (2) Nunez himself believed that the age difficult male in the second video was a minor; (3) Nunez' messages suggest previous discussion of child pornography; (4) the affidavit indicated that the age difficult male was a "suspected minor"; (5) and HSI agents confirmed the accuracy of information that CW-1 provided. In addition, the application also omitted CW-1's statement that "he did not represent that someone was sexually interested in minors when they were not," which tends to offset any effect of these two alleged omissions. Thus, even including the allegedly omitted information, the warrant applications would contain sufficient information to establish probable cause.[12]

## IV.  CONCLUSION

For the foregoing reasons, the Court denies Nunez' motion to suppress and Nunez' request for a <u>Franks</u> hearing.

**IT IS SO ORDERED.**

Dated: July 19, 2021



CHARLES R. BREYER
United States District Judge

---

[12] Because the Court concludes that the warrant applications supported the magistrate's probable cause determinations and that Nunez has not made the substantial preliminary showing required for a <u>Franks</u> hearing, the Court need not determine whether the good faith exception to the exclusionary rule applies. Opp. at 24–25; <u>United States v. Leon</u>, 468 U.S. 897, 932 (1984).